1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN BROOKS, et al.,                    No. 2:16-cv-2598-KJM-KJN PS

12                   Plaintiffs,

13           v.                              ORDER

14   FCI LENDER SERVICES, INC., et al.,

15                   Defendants.

16

17          Presently before the court is defendant FCI Lender Services, Inc.'s ("FCI") motion to

18   dismiss the claims asserted against it in plaintiffs' complaint pursuant to Federal Rule of Civil

19   Procedure 12(b)(6), or, in the alternative, for a more definite statement pursuant to Federal Rule

20   of Civil Procedure 12(e).  (ECF No. 8.)  Also before the court is FCI's motion to strike certain

21   portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f).  (ECF No. 9.)

22   Plaintiffs filed an opposition to the motions, and FCI filed a reply.  (ECF Nos. 15, 25, 26.)  The

23   court heard this matter on its January 19, 2017 law and motion calendar.  Plaintiff John Brooks

24   appeared on his own behalf, but plaintiff Laura Brooks failed to make an appearance.[1]  Attorney

25   _____

26   [1] While the court did not discuss this with John Brooks during the hearing on this matter,
     plaintiffs are cautioned that because they are both currently proceeding pro se in this matter, they
27   must both appear at any hearings scheduled in this action on their own behalf.  As he is not an
     attorney, John Brooks may not appear on Laura Brooks' behalf.  Similarly, Laura Brooks may not
28   make an appearance on behalf of John Brooks.  The fact that plaintiffs may be married or have

1

1   Fred Hickman appeared telephonically on behalf of FCI.[2]  The undersigned has fully considered

2   the parties' briefs, the parties' oral arguments, and appropriate portions of the record.  For the

3   reasons that follow, the court grants FCI's motion to dismiss, with leave to amend as to some

4   claims, and without leave to amend as to others, as specified below.  Furthermore, FCI's motion

5   to strike is denied.

6   I.    Relevant Allegations of the Complaint

7        Plaintiffs allege in their complaint that they are the owners of real property located at 1682

8   Chilton Dr. Roseville, CA 95747 (the "Property").  (ECF No. 1 at 10.)  Plaintiffs allege that they

9   took out a "second Deed of Trust" ("Second DOT") on the Property on an unspecified date,

10  which was originally held by defendant Homecoming Financial, LLC, and was subsequently

11  transferred numerous times.  (Id.)  "At some point in or around 2013, Defendant Ocwen Loan

12  Servicing serviced the loan on behalf of whichever entity held the [Second DOT] at that time."

13  (Id.)  Plaintiffs allege further that "[o]n February 20, 2008, Plaintiffs filed for Chapter 7

14  Bankruptcy in the Eastern District of California," which discharged the loan held by

15  Homecoming Financial, LLC.  (Id. at 11.)[3]

16       Plaintiffs also allege that "[i]n or around April 2015, the [Second DOT] was held by

17  Defendant Bucks [Financial, LLC]" ("Bucks").  (Id. at 10.)  They allege further that "[o]n or

18  about April 13, 2015, Plaintiffs and Bucks reached a settlement/accord and satisfaction, in which

19  Plaintiffs agreed to pay and Bucks agreed to accept the sum of Five Thousand Dollars and no

20  cents ($5,000.00) as full and final settlement of the Second DOT."  (Id.)  Plaintiffs allege that

21  "[t]his agreement was confirmed in writing."[4]  (Id.)  Plaintiffs allege further that "[w]ithin days of

22
23  some other familial connection is not sufficient to permit either plaintiff to represent the other
    plaintiff.

24  [2] Counsel for defendants Ocwen Loan Servicing and SN Servicing Corporation also appeared
25  telephonically at the hearing for purposes of monitoring the proceedings.

26  [3] However, at the hearing, plaintiffs conceded that the loan was not discharged in the bankruptcy.

27  [4] Plaintiffs also allege that a "true and correct copy" of the written contract is attached to the
    complaint, but no such document is attached to the copy of the complaint attached to defendants'
28  notice of removal.  (See ECF No. 1, Exhibit A.)

2

1    sending the confirming letter/contract, and prior to Plaintiffs' receipt of said letter, a

2    representative from Bucks contacted Plaintiffs by phone to inform them that Bucks was breaching

3    the agreement." (Id. at 11.)  Plaintiffs allege that they offered to send the agreed-upon amount of

4    money to Bucks forthwith, but "Bucks specifically refused Plaintiffs' tender of performance."

5    (Id.)

6          Plaintiffs allege that Bucks sold the Second DOT to defendant MDJ Properties, LLC

7    ("MDJ") "[i]n or around June 2015," and that MDJ is the current holder of that loan.  (Id. at 10-

8    11.)  Plaintiffs allege further that defendant FCI is servicing the loan on MDJ's behalf.  (Id. at

9    11.)  Plaintiffs also allege that they have attempted to meet and confer with both FCI and MDJ

10   regarding the purported contract plaintiffs had entered into with Bucks, but that both defendants

11   "have refused to acknowledge the settlement/contract."  (Id.)  Plaintiffs allege that FCI, acting

12   through defendant California TD Specialists, recorded a Notice of Default ("NOD") on the

13   Property on July 5, 2016, and indicated that it will record a Notice of Trustee's Sale.  (Id.)

14   Finally, plaintiffs allege that "[a]t all times relevant, including after Plaintiffs filing for Chapter 7

15   Bankruptcy protection, defendants, and each of them, notified all 3 credit reporting agencies,

16   TransUnion, Equifax, and Experian, that Plaintiffs were delinquent on the payments on the

17   Second DOT."  (Id.)

18         Based on these factual allegations, plaintiffs assert the following 15 causes of action

19   against all defendants:  (1) breach of contract and the implied covenant of good faith and fair

20   dealing; (2) fraudulent inducement to contract; (3) common law restitution/unjust enrichment;

21   (4) specific performance; (5) accounting; (6) declaratory judgment and injunctive relief; (7) bad

22   faith denial of contract; (8) violation of bankruptcy discharge injunction; (9) violation of the Fair

23   Debt Collections Practices Act, 15 U.S.C. §§ 1601, 1692 et seq.; (10) violation of the California

24   Fair Debt Collections Practices Act, California Civil Code §§ 1788 et seq.; (11) violation of the

25   Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; (12) violation of the California Consumer

26   Credit Reporting Act, California Civil Code § 1785.10 et seq.; (13) fraud and conspiracy to

27   commit fraud; (14) unlawful business practices in violation of [California] Business &

28   Professions Code Section 17200; and (15) fraudulent business practices in violation of

1    [California] Business & Professions Code Section 17200.  (Id. at 12-25.)

2    II.    Legal Standards

3        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

4    challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

5    Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

6    of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

7    plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

8    also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

9    a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

10   is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

11   Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

12   factual content that allows the court to draw the reasonable inference that the defendant is liable

13   for the misconduct alleged."  Id.

14       In considering a motion to dismiss for failure to state a claim, the court accepts all of the

15   facts alleged in the complaint as true and construes them in the light most favorable to the

16   plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

17   however, required to accept as true conclusory allegations that are contradicted by documents

18   referred to in the complaint, and [the court does] not necessarily assume the truth of legal

19   conclusions merely because they are cast in the form of factual allegations."  Paulsen, 559 F.3d at

20   1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

21   prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

22   to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

23   Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

24   Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

25   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

26   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

27   evaluating them under the standard announced in Iqbal).

28   ////

4

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

III.     Parties' Requests for Judicial Notice

As an initial matter, both plaintiffs and FCI request that the court take judicial notice of certain documents purportedly related to the allegations of the complaint, or to this action more generally.  (ECF Nos. 10, 15-1.)[5]  While the court recognizes that many of the documents for which the parties seek judicial notice are properly noticeable, the court declines to notice them at this juncture as none of these documents alter or assist in the court's analysis of FCI's motions set forth below.

IV.      Discussion

A.     Breach of Contract and the Covenant of Good Faith and Fair Dealing

For their first cause of action, plaintiffs claim that they entered into a valid written contract with defendant Bucks to fully settle the debt they owed under the Second DOT, which was alleged to be in excess of $70,000, for a total of $5,000, but that Bucks repudiated that

---

[5] Specifically, plaintiffs request that the court take judicial notice of:  (1) the contract document they allegedly entered into with defendant Bucks referenced in the allegations of their complaint; (2) plaintiffs' ex parte application for a temporary restraining order ("TRO") filed in the present action in the Placer County Superior Court prior to defendants' removal of this action; and (3) the Placer County Superior Court's order granting plaintiffs' motion for a TRO.  (ECF No. 15-1.) FCI requests that the court take judicial notice of:  (1) a Home Equity Line of Credit and Promissory Note dated June 17, 2005; (2) a Deed of Trust dated June 17, 2005 and recorded in the official records of the Placer County Recorder's Office on June 28, 2005 as DOC-2005-0083060; and (3) the court docket of the U.S. Bankruptcy Court Eastern District of California, Case No.: 08-21985.  (ECF No. 10.)

1   agreement when plaintiffs attempted to tender performance pursuant to its terms.  Plaintiffs allege

2   further that the terms of the alleged contract subsequently became binding on defendants FCI and

3   MDJ when MDJ purchased Bucks' rights under the Second DOT and FCI took over the role as

4   servicer under that note, but that both of those defendants refused to acknowledge the terms of

5   that agreement.  Based on these allegations, plaintiffs contend that "[d]efendants breached the

6   contract and their duties of good faith and fair dealing . . . insofar as they refused to honor their

7   contractual obligations."  (ECF No. 1 at 12.)

8        To state a claim for breach of contract under California law, plaintiffs must allege (1) the

9   existence of a contract; (2) plaintiff's performance; (3) defendant's breach of the contract; and (4)

10  damages flowing from the breach.  CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239

11  (Cal. Ct. App. 2008).  In California, every contract also carries with it an implied covenant of

12  good faith and fair dealing.  Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 720 (2007) ("The

13  law implies in every contract . . . a covenant of good faith and fair dealing"); Freeman & Mills,

14  Inc. v. Belcher Oil Co., 11 Cal. 4th 85, 91 (1995) ("It is well settled that, in California, the law

15  implies in every contract a covenant of good faith and fair dealing.") (emphasis in original).  "A

16  typical formulation of the burden imposed by the implied covenant of good faith and fair dealing

17  is 'that neither party will do anything which will injure the right of the other to receive the

18  benefits of the agreement.'" Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 5892 (Cal.

19  Ct. App. 2005) (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).  However,

20  "[t]he implied covenant of good faith and fair dealing 'cannot impose substantive duties or limits

21  on the contracting parties beyond those incorporated in the specific terms of their agreement.'"

22  Lane v. Vitek Real Estate Indus. Grp., 713 F. Supp. 2d 1092, 1102 (E.D. Cal. 2010) (quoting

23  Agosta v. Astor, 120 Cal. App. 4th 596, 607 (Cal. Ct. App. 2004)).  "Absent [a] contractual right

24  ... the implied covenant has nothing upon which to act as a supplement, and should not be

25  endowed with an existence independent of its contractual underpinnings."  Waller v. Truck Ins.

26  Exchange, Inc., 11 Cal. 4th 1, 36 (1995) (internal citations omitted).

27       With regard to defendant FCI, the complaint fails to allege facts sufficient to state a claim

28  for breach of contract.  While plaintiffs allege in a conclusory fashion that the terms of the

1    contract at issue were "subsequently binding upon . . . FCI and MDJ" because they were Bucks'

2    successors in interest under the Second DOT, (ECF No. 1 at 12), plaintiffs fail to plausibly allege

3    that any obligations Bucks would have had under the purported contract were actually assigned to

4    or assumed by FCI or MJD through MJD's alleged purchase of the loan from Bucks.  "Where the

5    subject matter of the assignment (e.g., a bilateral contract) involves reciprocal rights and duties,

6    the assignor may transfer the *benefits*, i.e., the assignor may transfer his or her rights, but cannot

7    escape the *burden* of his or her obligation by a mere assignment.  The assignor still remains liable

8    to the promisee."  1 Witkin, Summary 10th Contracts § 730 (2005) (emphasis added).  "Even if

9    the assignee assumes the obligation, i.e., agrees to perform it, the assignor still remains

10   secondarily liable as a surety or guarantor, unless the promisee releases him or her or the parties

11   execute a complete novation."  Id. (citing Cutting Packing Co. v. Packers Exchange of Calif., 86

12   Cal. 574, 576(1890); Fenn v. Pickwick Corp., 117 Cal. App. 236, 639 (Cal. Ct. App. 1931)).

13          Nothing in the complaint indicates that either FCI agreed to assume the obligation to

14   accept $5000.00 as complete satisfaction of plaintiffs' payment obligations under the mortgage.

15   Indeed, the allegations establish that FCI explicitly "refused to acknowledge or honor the

16   settlement/contract."  (ECF No. 1 at 11.)  Nor are there any allegations indicating that the parties

17   executed a valid novation under which FCI agreed to consider a $5000.00 payment as complete

18   satisfaction of plaintiffs' payment obligations under the note.  Accordingly, plaintiffs' claim that

19   FCI breached its contractual obligations by refusing to honor the alleged settlement payment is

20   without merit as a matter of law.  Similarly, their claim for breach of the covenant of good faith

21   and fair dealing lacks merit because it is premised on the same purported contractual

22   underpinnings as plaintiffs' breach of contract claim.  Therefore, plaintiffs' first cause of action is

23   dismissed without leave to amend insofar as it is asserted against FCI.

24          B.      Fraud-based Claims

25          Plaintiffs' second and thirteenth causes of action are premised on fraud.  Specifically,

26   plaintiffs contend in their second cause of action that defendant Bucks induced plaintiffs into an

27   agreement to settle the debt owed under the Second DOT without any intent to actually perform

28   its end of the bargain.  In their thirteenth cause of action, plaintiffs similarly allege that Bucks

1    induced plaintiffs into the settlement contract based on unspecified false representations and

2    without an intent to be bound.  Plaintiffs allege further that FCI and MDJ "knew or should have

3    known" that plaintiffs had entered into the settlement contract with Bucks at the time they

4    purchased Bucks' interest under the Second DOT without "perform[ing] their due diligence" and

5    "with the intent, or with reckless disregard, to foreclose on the property and refuse to honor [the

6    settlement] contract."  (ECF No. 1 at 23.)  Plaintiffs also nebulously allege that all defendants

7    engaged in a "conspiracy to commit fraud."  (Id.)

8         The elements of a fraud claim under California law are:  (1) misrepresentation (false

9    representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3)

10   intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  Lazar

11   v. Superior Court, 12 Cal. 4th 631, 638 (1996).  "[T]o establish a cause of action for fraud a

12   plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of

13   action."  Conrad v. Bank of America, 45 Cal. App. 4th 133, 156 (Cal. Ct. App. 1996).  "The

14   absence of any one of these required elements will preclude recovery."  Wilhelm v. Pray, Price,

15   Williams & Russell, 186 Cal. App. 3d 1324, 1332 (Cal. Ct. App. 1986).  To establish fraud

16   through concealment, a plaintiff must show that the defendant had a duty to disclose the

17   concealed facts.  OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.,157 Cal. App.

18   4th 835, 845 (Cal. Ct. App. 2007).  "In addition, for a viable cause of action for fraud, the

19   pleading must show a cause and effect relationship between the fraud and damages sought;

20   otherwise no cause of action is stated."  Nagy v. Nagy, 210 Cal. App. 3d 1262, 1269 (Cal. Ct.

21   App. 1989); Zumbrun v. University of Southern California, 25 Cal. App. 3d 1, 12 (Cal. Ct. App.

22   1972).  There is no separate cause of action for "conspiracy to commit fraud."  Rather,

23   "[c]onspiracy only serves as a theory of liability for claims of fraud."  Lane, 713 F. Supp. 2d at

24   1103, n.1 (citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994)).

25        Federal Rule of Civil Procedure 9(b), which provides a heightened pleading standard for

26   fraud claims, states:  "In alleging fraud or mistake, a party must state with particularity the

27   circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a

28   person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  These circumstances include the

1  "'time, place, and specific content of the false representations as well as the identities of the

2  parties to the misrepresentations.'"  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per

3  curiam) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)); see also

4  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be

5  accompanied by 'the who, what, when, where, and how' of the misconduct charged").  "Rule 9(b)

6  demands that the circumstances constituting the alleged fraud be specific enough to give

7  defendants notice of the particular misconduct . . . so that they can defend against the charge and

8  not just deny that they have done anything wrong."  Kearns, 567 F.3d at 1124.

9       With regard to plaintiffs' second cause of action, it appears that plaintiffs name all

10  defendants to this claim despite only alleging that it was defendant Bucks that entered into the

11  purported contract with plaintiffs without an intent to perform its end of the bargain.  Nothing in

12  the complaint's allegations suggest that FCI was initially a party to this agreement or somehow

13  fraudulently induced plaintiffs into entering that arrangement.  To the contrary, the allegations

14  show that FCI merely acted as mortgage servicer under the Second DOT after Bucks had sold its

15  interest to defendant MJD and had attempted to foreclose under that note after stepping into that

16  role.  Because the allegations establish that FCI did not fraudulently induce plaintiffs into the

17  contract alleged in the complaint, plaintiffs' second cause of action is dismissed without leave to

18  amend insofar as it is asserted against that defendant.

19       With regard to plaintiffs' thirteenth cause of action, plaintiffs allege that "[d]efendants

20  FCI and MDJ, at the time of purchasing the note from their predecessors in interest, knew or

21  should have known that the . . . contract [between Bucks and plaintiffs] had been entered into, yet

22  purchased the loan with the intent, or with reckless disregard, to foreclose on the property and

23  refuse to honor this contract."  (ECF No. 1 at 23.)  Plaintiffs allege further that "[h]ad Defendants

24  done their due diligence when purchasing this debt, they would have honored the terms of the

25  binding contract, or they would have chosen to not purchase the debt."  (Id.)

26       Plaintiffs' fraud allegations with regard to FCI do not come remotely close to stating a

27  cognizable fraud claim against that defendant.  Plaintiffs do not allege that FCI made a false

28  representation of fact, or concealed or did not disclose material facts.  Instead, plaintiffs merely

1   allege that FCI was the loan servicer for MDJ after MDJ had entered into a contract with

2   defendant Bucks to purchase Bucks' interest under the Second DOT, and that FCI refused to

3   honor the terms of a separate alleged agreement that plaintiff had entered into with Bucks

4   regarding payment of the loan secured by the Second DOT prior to MDJ's purchase.  Nothing in

5   these allegations remotely suggests that FCI made an actionable misrepresentation to plaintiffs in

6   connection with its actions relating to its servicing under the Second DOT, and subsequent

7   attempts to foreclose under that note.

8          As explained above, the allegations establish that FCI was not bound by the alleged

9   obligations of the contract plaintiffs purportedly entered into with Bucks, and the complaint does

10   not contain any allegations suggesting that FCI made some form of false representation that they

11   would honor the terms of that agreement when they actually intended to not do so.  Instead, the

12   complaint makes it clear that FCI represented to plaintiffs upfront that it did not agree to assume

13   any obligations Bucks may have had under that agreement.  (See ECF No. 1 at 11.)  Accordingly,

14   plaintiffs' fraud-based claims against FCI are dismissed without leave to amend.

15          C.      Restitution/Unjust Enrichment

16          Third, plaintiffs claim that they are entitled to restitution and disgorgement of any unjustly

17   retained profits defendants have obtained through their alleged conduct.  Unjust enrichment is not

18   an independent cause of action under California law.  See, e.g., Jogani v. Superior Court, 165 Cal.

19   App. 4th 901, 911 (Cal. Ct. App. 2008) ("[U]njust enrichment is not a cause of action . . . .

20   Rather, it is a general principle underlying various doctrines and remedies, including quasi-

21   contract.") (internal citation omitted); McBride v. Boughton, 123 Cal. App. 4th 379, 387 (Cal. Ct.

22   App. 2004) ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a

23   general principle, underlying various legal doctrines and remedies.") (internal citations and

24   quotations omitted); Yates v. Aurora Loan Servs., LLC, 2011 WL 2429376, at *9 (N.D. Cal. June

25   13, 2011) (citing Melchior v. New Line Productions, Inc., 106 Cal. App. 4th 779, 793 (Cal. Ct.

26   App. 2003) ("There is no claim for unjust enrichment in California, rather it is an equitable

27   remedy.").  Accordingly, plaintiffs' third cause of action against FCI is dismissed without leave to

28   amend.

10

1    D.    Specific Performance

2        For their fourth cause of action, plaintiffs assert that they are entitled to specific

3    performance of the purported contract they entered into with Bucks, the terms of which required

4    the acceptance of $5,000.00 as full satisfaction of plaintiffs' payment obligations under the

5    mortgage at issue.

6        In order to seek specific performance of a contract under California law, plaintiffs must be

7    able to allege the following: "(1) a contract sufficiently definite and certain in its terms to be

8    enforced; (2) that the contract was just and reasonable; (3) that [plaintiffs] ha[ve] performed

9    [their] side of the bargain; (4) that the promisor has failed to perform; . . . (5) that the contract was

10   supported by adequate consideration[; and] . . . (6) that [their] remedy at law is inadequate."

11   Porporato v. Devincenzi, 261 Cal. App. 2d 670, 674 (Cal. Ct. App. 1968) (internal citations

12   omitted).  It has long been recognized that "specific performance will be granted only where the

13   legal remedy is inadequate."  Eagle Rock Entm't, Inc. v. Coming Home Prods., Inc., 2004 WL

14   5642002, at *17 (C.D. Cal. Sept. 1, 2004) (citing Morrison v. Land, 169 Cal. 580 (1915)).  In

15   Morrison, the California Supreme Court noted that "the exclusive jurisdiction of equity to grant

16   relief by way of specific performance of a contract will be exercised only in those cases where the

17   legal remedy of compensatory damages is insufficient under the circumstances of the case . . . to

18   do complete justice between the parties."  169 Cal. at 586.  Applying this principle, courts have

19   generally found damages to be inadequate only in cases where the services rendered pursuant to

20   the contract at issue were "peculiar, extraordinary, or unique," such as contracts for the transfer of

21   real property.  Kennedy v. Bank of America, 237 Cal. App. 2d 637, 647 (Cal. Ct. App. 1965)

22   (citing Morrison, 169 Cal. at 586-87); see also Porporato, 261 Cal. App. 2d at 677.  Furthermore,

23   "the fact that damages may be difficult to prove or ascertain does not require that specific

24   performance be granted."  Eagle Rock Entm't, Inc., 2004 WL 5642002, at *17 (citing Wooley v.

25   Embassy Suites, Inc., 227 Cal. App. 3d 1520, 1535 (Cal. Ct. App. 1991).

26        Here, the alleged contract at issue is the one allegedly entered into with Bucks under

27   which Bucks would accept plaintiffs' payment of $5,000.00 as full satisfaction of their payment

28   obligations under their mortgage.  Plaintiffs attempt to assert that Bucks' alleged obligation to

1    accept that amount as full settlement was assigned to defendants FCI and MDJ when MDJ

2    purchased the loan from Bucks, and FCI became the loan's servicer under the Second DOT.

3    However, as discussed above with regard to plaintiffs' first cause of action for breach of contract,

4    the allegations demonstrate that FCI did not assume the obligation to accept $5,000.00 as full

5    satisfaction of the loan; nor did it enter into a valid novation with plaintiffs creating such an

6    obligation.  Accordingly, plaintiffs cannot assert a valid action for specific performance against

7    FCI as that defendant was not bound by the contractual obligation plaintiffs seek to enforce

8    through their specific performance claim.  Furthermore, nothing in the allegations indicates that

9    the alleged contract at issue required the provision of peculiar, extraordinary, or unique services

10   such that a legal remedy would be inadequate to compensate plaintiffs for their alleged losses.

11   Indeed, any losses plaintiffs may have suffered as a result of the alleged breach of contract would

12   be purely pecuniary in nature and, therefore, could be recovered through an adequate damages

13   remedy.  Accordingly, plaintiffs' allegations fail to state a claim for specific performance against

14   FCI and their fourth cause of action against that defendant is dismissed without leave to amend.

15          E.      Accounting

16          Fifth, plaintiffs assert an action for accounting.  Specific to this claim, they allege that all

17   defendants have unjustly retained profits from their alleged actions that are "unknown to

18   Plaintiffs and cannot be ascertained without an accounting of the business of Defendants from

19   2008 to present."  (ECF No. 1 at 14-15.)

20           "An action for an accounting may be brought to compel the defendant to account to the

21   plaintiff for money or property (1) where a fiduciary relationship exists between the parties, or (2)

22   where, even though no fiduciary relationship exists, the accounts are so complicated that an

23   ordinary legal action demanding a fixed sum is impracticable."  Jolley v. Chase Home Fin., LLC,

24   213 Cal. App. 4th 872, 910 (Cal. Ct. App. 2013).  "An action for accounting is not available

25   where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by

26   calculation."  Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (Cal. Ct. App. 2009); see also

27   St. James Church of Christ Holiness v. Superior Court In & For Los Angeles Cty., 135 Cal. App.

28   2d 352, 359 (1955) (citing Kinley v. Thelen, 158 Cal. 175, 182 (1910)) ("An accounting will not

1  be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to

2  be a sum certain.").

3      Nothing in the complaint here hints at the existence of a fiduciary relationship between

4  plaintiffs and FCI giving rise to a right by plaintiffs to seek the accounting they request.

5  Moreover, plaintiffs allege that "[d]efendants allege that Plaintiffs owe in excess of $70,000 on

6  the note," the purported contract between plaintiffs and Bucks stated that plaintiffs were to pay

7  Bucks $5,000.00 "as full and final settlement of the Second DOT," and plaintiffs seek damages

8  for either sums certain or sums that can be made certain by calculation.  (See ECF No. 1 at 10,

9  26-27.)  Accordingly, the allegations show that there was neither a fiduciary relationship between

10  plaintiffs and FCI, nor a specification of amounts due so complicated that they cannot be

11  determined in a legal action for damages.  Therefore, plaintiffs' cause of action for accounting

12  against FCI is dismissed without leave to amend.

13      F.      Declaratory Judgment and Injunctive Relief

14      For their sixth cause of action, plaintiffs assert a claim for declaratory judgment and

15  injunctive relief.  Declaratory relief and injunctive relief are not independent claims, but are

16  instead forms of relief that may be requested in conjunction with a cognizable cause of action that

17  permits a court to grant such relief.  Santos v. Countrywide Home Loans, 2009 WL 3756337, at

18  *5 (E.D. Cal. Nov. 6, 2009) ("Declaratory and injunctive relief are not independent claims, rather

19  they are forms of relief.").  Accordingly, plaintiffs' sixth cause of action against FCI is dismissed

20  without leave to amend insofar as it seeks to obtain declaratory and injunctive relief independent

21  of any of plaintiffs' other claims.

22      G.      Bad Faith Denial of Contract

23      In their seventh cause of action, plaintiffs assert that defendants are liable for their "bad

24  faith denial of contract."

25      No cause of action exists under California law for a bad faith denial of contract except in

26  cases involving an insurance contract.  In Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th

27  85, 103 (1995), the California Supreme Court overruled its prior holding in Seaman's Direct

28  Buying Service, Inc. v. Standard Oil Co., 36 Cal. 3d 752 (1984), and adopted "a general rule

1  precluding tort recovery for noninsurance contract breach, at least in the absence of violation of

2  an independent duty arising from principles of tort law . . . other than the bad faith denial of the

3  existence of, or liability under, the breached contract."

4      Here, plaintiffs allege that "[d]efendants FCI and Bucks previously acknowledged in

5  writing the existence of the settlement agreement/contract but continue to refuse to honor its

6  terms."  (ECF No. 1 at 16.)  Under the California Supreme Court's ruling in Freeman & Mills,

7  Inc., no such tort claim exists as a matter of law as this action does not involve an insurance

8  contract, and plaintiffs' allegations make it clear that FCI did not violate an independent duty

9  arising from tort law.  See Zender v. Vlasic Foods, Inc., 91 F.3d 158 (9th Cir. 1996) (affirming

10  judgment dismissing claim for bad faith breach of contract sounding in tort based on the

11  California Supreme Court's decision in Freeman & Mills, Inc. and noting that "[t]he remedy, if

12  any, [for such a claim] is for breach of contract").  Rather, it is clear that plaintiffs' bad faith

13  denial of contract claim is little more than a restyling of their breach of contract claim under a

14  different name.  Accordingly, plaintiffs' bad faith denial of contract claim against FCI is

15  dismissed without leave to amend.

16      H.    Violation of Bankruptcy Discharge Injunction

17      For their eighth cause of action, plaintiffs assert, pursuant to 11 U.S.C. § 524, that

18  defendants violated the injunction put in place by the court in plaintiffs' alleged bankruptcy

19  action against plaintiffs' creditors from seeking to collect any debts discharged in that action.

20  However, a debtor cannot assert an action against creditors pursuant to 11 U.S.C. § 524, as no

21  private right of action exists under that statute.  Walls v. Wells Fargo Bank, N.A., 276 F.3d 502,

22  510 (9th Cir. 2002) ("[W]e cannot say that Congress intended to create a private right of action

23  under [11 U.S.C.] § 524, and we shall not imply one.").  Therefore, plaintiffs' eighth cause of

24  action against FCI is dismissed without leave to amend.

25      I.    Claims for Violation of the Fair Debt Collections Practices Act and California Fair

26          Debt Collections Practices Act

27      For their ninth and tenth causes of action, plaintiffs assert that defendants violated the Fair

28  Debt Collections Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collections

1   Practices Act ("RFDCPA").[6]

2          "The [FDCPA] prohibits 'debt collector[s]' from making false or misleading

3   representations and from engaging in various abusive and unfair practices." Heintz v. Jenkins,

4   514 U.S. 291, 292 (1995).  Similarly, the RFDCPA "prohibits a host of unfair and oppressive

5   methods of collecting debt." Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1197

6   (E.D. Cal. 2009).  "To be liable for a violation of the FDCPA or the RFDCPA, the defendant

7   must—as a threshold requirement—be a '*debt collector*' within the meaning of the Acts."

8   Putkkuri v. Reconstruct Co., 2009 WL 32567, at *7 (S.D. Cal. Jan.5, 2009) (emphasis added); see

9   also 15 U.S.C. § 1692a(6); Cal. Civ. Code § 1788.2(c).  "The law is well settled that FDCPA's

10  definition of debt collector does not include the consumer's creditors, a *mortgage servicing*

11  *company*, or any assignee of the debt." Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218,

12  1224 (E.D. Cal. 2010) (citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985))

13  (emphasis added); see also Angulo v. Countrywide Home Loans, Inc., 2009 WL 3427179, at *5

14  (E.D. Cal. October 26, 2009); Nera v. Am. Home Mortg. Servicing, Inc., 2009 WL 2423109, at

15  *4 (N.D. Cal. Aug. 5, 2009); Pineda v. Saxon Mortg. Servs., 2008 WL 5187813, at *3 (C.D. Cal.

16  Dec. 10, 2008).  Similarly, mortgage servicing companies do not fall within the definition of

17  "debt collector" under the RFDCPA.  Mannello v. Residential Credit Sols., Inc., 2016 WL 94236,

18  at *4 (C.D. Cal. Jan. 7, 2016) (internal citations and quotation marks omitted) ("The law is well

19  settled that FDCPA's definition of debt collector does not include the consumer's creditors, a

20  mortgage servicing company, or any assignee of the debt. . . . The same is true of the Rosenthal

21  Act."); Lal, 680 F. Supp. 2d at 1224 ("[T]he RFDCPA does in fact mirror in the FDCPA, their

22  intentions were the same and exclusive, and, as such, a loan servicer is not a debt collector under

23  these acts.").  Furthermore, "the law is clear that foreclosing on a property pursuant to a deed of

24  trust is not a debt collection within the meaning of the RFDCPA or the FDC[P]A." Gamboa v.

25  Tr. Corps & Cent. Mortg. Loan Servicing Co., 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009);

26  Tapia v. Aurora Loan Servs., LLC, 2009 WL 2705853 (E.D. Cal. Aug. 25, 2009); Ricon v.

27
      _____
28  [6] Plaintiffs refer to the RFDCPA as the "California Fair Debt Collection Practices Act" in their
    complaint.  (ECF No. 1 at 19.)

1  Recontrust Co., 2009 WL 2407396 (S.D. Cal. Aug. 4, 2009).

2       Here, plaintiffs allege that FCI is the current mortgage servicer under the Second DOT,

3  attempted to foreclose on the Property, and refused to acknowledge plaintiffs' alleged settlement

4  contract that plaintiffs allegedly entered into with defendant Bucks.  Such allegations establish

5  that plaintiffs cannot sustain a claim against FCI under the FDPCA or the RFDCPA because FCI

6  is not a "debt collector" and did not engage in "debt collection" within the meaning those Acts.

7  Accordingly, plaintiffs' FDPCA or the RFDCPA against FCI are dismissed without leave to

8  amend.

9       J.       Violations of the Fair Credit Reporting Act and California's Consumer Credit

10               Reporting Act

11       For their eleventh and twelfth causes of action, plaintiffs claim that defendants violated

12  the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq., and California's Consumer

13  Credit Reporting Act ("CCRA"), California Civil Code §§ 1785.10, et seq.  Plaintiffs allege with

14  respect to both claims that defendants failed to respond to objections plaintiffs provided them

15  regarding the validity of the debt under the mortgage at issue and failed to provide notice to the

16  credit reporting agencies that plaintiffs disputed the validity of the information they furnished to

17  those agencies regarding that debt.

18       Under the FCRA, "[l]iability on a furnisher [of information to a credit reporting agency

19  ("CRA")] is limited in that an individual consumer cannot state an FCRA claim against a

20  furnisher unless the furnisher receives notice of the disputed information *from the CRA* and fails

21  to comply with its duties."  Johnson v. Wells Fargo Home Mortg., Inc., 558 F. Supp. 2d 1114,

22  1120 (D. Nev. 2008) (citing Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057,

23  1060(9th Cir. 2002)) (emphasis added).  "The Ninth Circuit has specifically held that the

24  furnisher's . . . duty to investigate is triggered *only after the consumer notifies the CRA*, and the

25  CRA then notifies the furnisher of credit."  Nelson v. Equifax Info. Servs., LLC, 522 F. Supp. 2d

26  1222, 1231 (C.D. Cal. 2007) (citing Nelson, 282 F.3d at 1060) (emphasis added).  It is

27  insufficient to sustain a claim under the FCRA based on a furnisher's failure to investigate the

28  accuracy of credit information it provides to a CRA when the furnisher's only notice that the

1   accuracy of that information is disputed comes from the consumer.  See Sanai v. Saltz, 170 Cal.

2   App. 4th 746, 765 (Cal. Ct. App. 2009) (dismissing FCRA claim because the only notice

3   defendant received that the information it provided to Experian was inaccurate came from the

4   plaintiff, not Experian).

5           In their opposition to FCI's motion, plaintiffs acknowledge that they have not yet notified

6   the CRAs of their belief that the information defendants provided to those agencies was

7   inaccurate, thereby making their FCRA and CCRA claims premature.  Accordingly, plaintiffs

8   request that the court dismiss those claims, but grant plaintiffs leave to amend their complaint to

9   re-assert them once they have provided notice to the CRAs, and the CRAs, in turn, have provided

10  notice to defendants.  FCI appears to not object to plaintiffs' request with regard to their FCRA

11  claim.  Therefore, plaintiffs' eleventh cause of action under the FCRA is dismissed with regard to

12  FCI, but with leave to amend.[7]

13          FCI argues in its motion that plaintiffs' CCRA claim should be dismissed without leave

14  to amend as it is preempted by the FCRA.  However, while claims under many of the CCRA's

15  provisions are preempted by the FCRA, see 15 U.S.C. § 1681t(b)(1)(F), the FCRA "expressly

16  saves from preemption 'section 1785.25(a) of the California Civil Code,'" which is a provision of

17  the CCRA.  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 888 (9th Cir. 2010) (quoting 15

18  U.S.C. § 1681t(b)(1)(F)(ii)).  Section 1785.25(a) provides that "[a] person shall not furnish

19  information on a specific transaction or experience to any consumer credit reporting agency if the

20  person knows or should know the information is incomplete or inaccurate."  Here, it is not

21  presently clear from the allegations of the complaint whether plaintiffs would be able to state a

22  claim under Section 1785.25(a), or any other provision of the CCRA that has not been preempted

23  by the FCRA.  Accordingly, plaintiffs' twelfth cause of action under the CCRA is dismissed, but

24  with leave to amend despite FCI's well-taken argument that many of the provisions of that Act

25  are preempted by the FCRA.  Nevertheless, plaintiffs are cautioned that if they decide to later

26  _____

27  [7] Nevertheless, plaintiffs are cautioned that if they later amend their complaint to re-state a claim under the FCRA, they must clearly identify each defendant against whom they are asserting that claim and provide factual allegations specific to each defendant against whom that claim is
28  brought that demonstrate how that defendant is liable under the FCRA.

1   amend their complaint to re-assert their CCRA claim, such a claim must be asserted only under

2   the provisions of that Act that have not been preempted by the FCRA.

3        K.        Claims Under California Business & Professions Code Section 17200, et seq.

4        Finally, for their fourteenth and fifteenth causes of action, plaintiffs claim that all

5   defendants engaged in fraudulent and unlawful business practices in violation of California's

6   unfair competition law ("UCL"), California Business & Professions Code §§ 17200, et seq.

7        To prove a claim under the UCL, a plaintiff must show "that the defendant committed a

8   business act that is either fraudulent, unlawful, or unfair." Levine v. Blue Shield of California,

9   189 Cal. App. 4th 1117, 1136 (2010). "A defendant cannot be liable under § 17200 for

10  committing 'unlawful business practices' without having violated another law." Ingels v.

11  Westwood One Broad. Servs., Inc., 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005).

12  Accordingly, a UCL claim based on such an allegation must rest on a violation of some

13  independent substantive statute, regulation or case law. See Farmers Ins. Exch. v. Superior Court,

14  2 Cal. 4th 377, 383 (1992) (action under section 17200 borrows violations of other laws).

15  Business conduct is "unfair" under the UCL, when it "offends an established public policy or . . .

16  is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." People

17  v. Casa Blanca Convalescent Homes, Inc., 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984). A

18  business act is "fraudulent" within the meaning of the UCL if it is "likely to deceive the public."

19  McKell v. Washington Mutual, Inc., 142 Cal. App. 4th 1457, 1471 (Cal. Ct. App. 2006). In

20  asserting a claim under the UCL's "fraudulent" prong in federal court, a plaintiff must plead facts

21  that meet the particularity requirements of Federal Rule of Civil Procedure 9(b). See Kearns v.

22  Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009).

23       Because plaintiffs' UCL claim against FCI based on a theory of unlawful business

24  practices is predicated on the same conduct giving rise to plaintiffs' other causes of action against

25  that defendant and the complaint fails to state a cognizable cause of action with regard to any of

26  those claims for the reasons discussed above, plaintiffs' UCL claim against FCI is not cognizable

27  as a matter of law insofar as it is based on an unlawful business practice. However, because it

28  may still be possible for plaintiffs to allege a violation of another law against FCI if given an

1    opportunity to amend their complaint, their UCL claim premised on unlawful business practices

2    is dismissed with leave to amend.

3          Similarly, with regard to plaintiffs' UCL claim premised on fraudulent business practices,

4    the complaint fails to allege facts indicating that FCI engaged in any fraudulent conduct for the

5    reasons discussed above with regard to plaintiffs' causes of action premised on fraud.

6    Furthermore, nothing in the complaint suggests that FCI's alleged conduct is "likely to deceive

7    the public" as the allegations do not establish that it engaged in a deceptive practice with regard to

8    acting in its role as servicer under the Second DOT.  However, while the court is skeptical that

9    plaintiffs can state facts giving rise to a cognizable UCL claim for fraudulent business practices

10   against FCI, plaintiffs' fifteenth cause of action is dismissed with leave to amend as it may be

11   possible for them to amend their complaint to state such a claim against that defendant based on

12   the other causes of action for which they are granted leave to amend.

13   V.    Motion to Strike

14         Defendant FCI also filed a motion to strike certain portions of plaintiffs' complaint

15   pursuant to Federal Rule of Civil Procedure Rule 12(f).

16         Rule 12(f) permits the court to strike any "insufficient defense or any redundant,

17   immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike are a

18   drastic remedy and generally disfavored."  Ricon v. Recontrust Co., 2009 WL 2407396, at *2

19   (S.D. Cal. Aug. 4, 2009).  "A matter is impertinent if the statements do not pertain, and are not

20   necessary, to the issues in question."  Id. (citing Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527

21   (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994)).  "'Scandalous' matters 'casts a

22   cruelly derogatory light on a party or other person.'"  Ricon, 2009 WL 2407396, at *2 (quoting In

23   re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal.2000).  "'Motions to strike

24   affirmative defenses are generally disfavored, but the court may properly grant them when the

25   defense is insufficient as a matter of law.'"  Ricon, 2009 WL 2407396, at *2 (quoting Multimedia

26   Patent Trust v. Microsoft Corporation, 525 F. Supp. 2d 1200, 1211 (S.D. Cal. 2007)).

27         FCI's motion to strike is directed toward specific allegations in the complaint relating to

28   the existence of an agency relationship among defendants and exemplary damages.  None of these

1    allegations constitute an insufficient defense, or a redundant, immaterial, impertinent or

2    scandalous allegation of the sort covered by Rule 12(f).  See Drewett v. Aetna Cas. & Sur. Co.,

3    405 F. Supp. 877, 878 (W.D. La. 1975) (denying Rule 12(f) motion to strike directed toward

4    allegations in the complaint relating to the plaintiffs' demand for penalties and attorneys' fees

5    because such allegations do not fall within the scope of Rule 12(f)).  Furthermore, FCI's

6    arguments in support of its request to strike these portions of the complaint are based on the

7    assertion that the targeted allegations are conclusory in nature and, therefore, insufficient to

8    support the legal conclusions plaintiffs attempt to draw from them.  Such arguments appear to be

9    more appropriately directed through a motion to dismiss pursuant to Rule 12(b)(6), which FCI has

10   also filed, rather than a motion to strike.  Accordingly, FCI's motion to strike is denied.

11   VI.    Conclusion

12         For the reasons discussed above, plaintiffs' complaint fails to provide allegations

13   sufficient to state a cognizable claim against defendant FCI.  Furthermore, the allegations of the

14   complaint make it clear that many of plaintiffs' claims asserted against that defendant are not

15   cognizable as a matter of law.  Therefore, plaintiffs should not be granted leave to amend as to

16   those claims against FCI as amendment would be futile.  See Cahill v. Liberty Mut. Ins. Co., 80

17   F.3d 336, 339 (9th Cir. 1996).  However, with regard to plaintiffs' other claims against FCI,

18   specifically their eleventh, twelfth, fourteenth, and fifteenth causes of action, it is conceivable that

19   plaintiffs could state a cognizable claim if given the opportunity to amend.  Accordingly, FCI's

20   motion to dismiss is also granted as to those claims, but with leave to amend.

21         The court notes that the reasons for dismissing many of plaintiffs' claims asserted against

22   FCI are likely equally applicable to some or all of the similar claims plaintiffs assert against other

23   defendants named in this action.  However, instead of also dismissing plaintiffs' claims against

24   these other non-moving defendants at this juncture, see Silverton v. Dep't of Treasury, 644 F.2d

25   1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action

26   as to defendants who have not moved to dismiss where such defendants are in a position similar

27   to that of moving defendants or where claims against such defendants are integrally related."), the

28   court finds it to be more beneficial to all parties involved to provide plaintiffs an opportunity to

amend their complaint, reassess their claims against each defendant in light of this order, and determine whether there exists a good faith basis to support each of their claims currently asserted against those defendants.  Accordingly, plaintiffs shall file a first amended complaint in accordance with this order.[8]

With regard to the first amended complaint, plaintiffs are cautioned that they cannot continue to assert any claims against FCI that have been dismissed without leave to amend.  Furthermore, for each claim, plaintiffs must clearly identify the defendant or defendants against whom that claim is specifically asserted and provide factual allegations sufficient to demonstrate a cognizable cause of action with respect to each of those defendants.  More importantly, plaintiffs must have a good faith basis for making such allegations.  See Fed. R. Civ. P. 11(b).  If plaintiffs determine that they cannot in good faith allege facts that would support a particular claim against a particular defendant, then they may wish to omit that claim from their amended complaint as failure to make allegations on a good faith basis may be grounds for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 11(c).

If plaintiffs decide to file an amended complaint, it shall be captioned "First Amended Complaint" and shall not exceed 40 pages, including attachments.[9]  Plaintiffs shall file their First Amended Complaint within 45 days from the date of this order.  Plaintiffs are informed that the court cannot refer to the original complaint, briefs, exhibits, or other filings to make their amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  Thus, once an amended complaint is filed, it supersedes the original complaint, which no longer serves any function in the case.

Plaintiffs are further informed that they are not required to file an amended complaint.  If plaintiffs determine that they do not wish to pursue the action at this juncture or that they cannot

---

[8] Because plaintiffs are directed to file an amended complaint, defendant SN Servicing Corporation's pending motion to dismiss the original complaint (ECF No. 20) is denied as moot.

[9] As the court noted during the hearing, plaintiffs should attach to their First Amended Complaint any operative document(s) they allege form the basis of the purported contract between defendant Bucks and themselves.

in good faith allege any facts asserting cognizable claims against any defendant, they may instead file a request for voluntary dismissal of the action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant FCI's motion to dismiss (ECF No. 8) is granted in the following manner:

   a. Plaintiffs' first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and thirteenth causes of action are dismissed without leave to amend to the extent they are asserted against defendant FCI.

   b. Plaintiffs' eleventh, twelfth, fourteenth, and fifteenth causes of action are dismissed with leave to amend insofar as they are asserted against defendant FCI.

2. Within 45 days of the date of this order, plaintiffs shall file either an amended complaint in accordance with this order or a request for voluntary dismissal of this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

3. Defendant FCI's motion to strike (ECF No. 9) is denied.

4. Defendant SN Servicing Corporation's motion to dismiss the complaint (ECF No. 20) is denied as moot.

5. The March 16, 2017 initial scheduling conference is vacated.  The court will reschedule this conference at a later date if the court deems it necessary.

IT IS SO ORDERED.

Dated: January 23, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE